SARAH ELIZABETH MCGINTY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McGinty v. Commissioner
Docket Nos. 14622-85, 5693-89
United States Tax Court
T.C. Memo 1991-435; 1991 Tax Ct. Memo LEXIS 484; 62 T.C.M. (CCH) 654; T.C.M. (RIA) 91435; September 5, 1991, Filed *484 Decision will be entered for the respondent. Sarah Elizabeth McGinty, pro se. J. Michal Nathan, for the respondent. GALLOWAY, Special Trial Judge. GALLOWAY
MEMORANDUM OPINION These consolidated cases were heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined, in a notice of deficiency for the years 1980 and 1981 dated March 15, 1985, and in a notice of deficiency for the year 1982 dated February 10, 1989, deficiencies and additions to tax in petitioner's Federal income taxes as follows: [SEE TABLE IN ORIGINAL] *485 The issues for decision are: (1) Whether petitioner underreported toke income on her 1980, 1981, and 1982 Federal income tax returns; and (2) whether petitioner is liable for the above additions to tax. These cases were part of a group of assigned cases called at a special trial session of the Court held at Las Vegas, Nevada. The cases contain common questions of fact or law and are among the remaining unresolved cases which arose from a toke compliance program initiated by respondent in Nevada in 1982. (An explanation of respondent's toke compliance program is found in , T.C.M. (RIA) 90168). Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Petitioner was a resident of Las Vegas, Nevada, when the petitions were filed in this case. 1. Underreported Toke Income
The parties agree that during the years 1980, 1981, and 1982, petitioner was employed on the graveyard shift at the Stardust Hotel and Casino (Stardust) in Las Vegas. Petitioner was classified as a "21" dealer during *486 these years. Stardust dealers normally worked eight-hour shifts during the years in issue. Petitioner began working at Stardust in 1978. Petitioner was paid a salary slightly above the minimum wage by Stardust in the taxable years (approximately $ 3.50 per hour). In addition, petitioner received tips (tokes) from the players at the "21" tables. "Tokes" are casino chips (house checks) that players either give to the dealers directly or place along with their own bets as bets for the dealers. , affd. without published opinion . Twenty-one dealers routinely pooled all tokes received by them, placing said tokes in a common toke box before leaving the area of the tables on a break or at the end of a shift. The total amount so pooled was divided at the end of a 24 hour period among all "21" dealers assigned to a table during that period. The pooled tokes were divided equally on the basis of a full share to a dealer for each eight-hour shift. The parties agree that the average hourly toke rate earned by all "21" Stardust dealers during the years in issue was $ 8.67. *487 Petitioner did not maintain any written diary, log, worksheet, or other contemporaneously kept accounting of toke income during the years in issue. Stardust occasionally used "21" dealers, including petitioner, to fill in as floor persons during the years in issue. The parties stipulated that dealers standing in for a floor person received floor pay ($ 90 per 8-hour day or $ 11.25 per hour) and no tips. Petitioner's wages and toke income for the years in issue were reported on W-2 forms as follows: [SEE TABLE IN ORIGINAL] Respondent reconstructed petitioner's toke income by multiplying the average hourly toke rate ($ 8.67) by the number of hours petitioner worked during each year in issue. Petitioner had reported toke income received in 1980 and 1981 at the hourly rates of $ 0.65 and $ 0.93, respectively. Petitioner reported zero toke income in 1982. Respondent determined that petitioner had underreported her toke income by $ 12,901.36, $ 14,437.05, and $ 13,984.71, for the respective taxable years of 1980, 1981, *488 and 1982. It is well established that tokes constitute compensation for services rendered and are includable in gross income under section 61. , affd. without published opinion sub nom. . Taxpayers are required to maintain sufficient records to establish their correct tax liability. Sec. 6001. If a taxpayer fails to keep the required records or the records maintained do not clearly reflect income, respondent is authorized by section 446 to compute income in accordance with such method as in his opinion clearly reflects the full amount of income received. . Respondent's determinations are presumed correct, and the burden is on petitioner to show otherwise. ; Rule 142(a). Petitioner disputes respondent's determinations that she underreported her toke income, contending that although she was classified as a dealer by Stardust, she worked for Stardust at other jobs for most of 1980 and 1981 and all of 1982. (Petitioner *489 listed her occupation as "dealer" on her 1980, 1981, and 1982 tax returns). Petitioner first claims that although classified as a dealer, she worked as a floor person and occasionally as a pit clerk during most of 1980 and 1981 and all of 1982. (There is no evidence in the record as to how much pit clerks earned as compared to "21" dealers, or what petitioner earned, if she worked as a pit clerk in the taxable years. It appears that Stardust used dealers as pit clerks sparingly, if at all, during the years in issue). In addition to her own testimony, petitioner called two former co-workers who worked with her on the graveyard shift during all or part of the taxable years 1980-1982. One co-worker dealer testified that she never saw petitioner work as a dealer. The other co-worker testified that from October 16, 1980 through the end of 1982, he saw petitioner work as a dealer and as a floor person and that petitioner worked as a dealer "no more than 50 percent of the time." On the other hand, Phil Dioguardi, petitioner's supervisor on the graveyard shift for a seven month period in 1980 extending into 1981, testified that petitioner was "a very good dealer", and that he used her *490 as a floor person only about seven times during that time period. Mr. Dioguardi stated that when petitioner worked the floor she was paid floor persons' wages and received no tips. After he was transferred to the day shift, Mr. Dioguardi still saw petitioner and was aware that she worked as a dealer. Neither party called petitioner's supervisor, during the 1982 year, to testify regarding how frequently petitioner worked as a dealer or floor person. However, petitioner herself stated during cross-examination of one of her witnesses that "I have been a dealer since 1978. I am still a dealer. I have been a dealer for 12 years." Petitioner also contends that when working as a floor person, she received dealers' wages of approximately $ 3.50 per hour with no tips or tokes instead of the normal pay for floor persons during the 1980-1982 years of $ 11.25 per hour. According to petitioner, her employer was guilty of discriminatory practices against women in managerial positions since Stardust "occasionally used female dealers in that (floor person) capacity while paying them dealers' wages." Petitioner's testimony was controverted by Mr. Dioguardi, a 32-year employee of Stardust. *491 He knew of no discrimination against women during the years in issue. Ms. Krol Stover, assistant controller and former personnel director of Stardust since April 1986, had a similar managerial position at the larger Las Vegas Tropicana Hotel/Casino prior to her Stardust employment. She named 10 women at Stardust presently in managerial positions, including four female floor persons paid floor person's wages. Ms. Stover was unaware of any female employment discriminatory action by her employer in the 1980s before her Stardust employment commenced. After weighing the evidence in this record, we conclude that petitioner has failed to prove that she did not earn tip income in the amounts determined by respondent. Accordingly, we sustain respondent's determination. 2. Additions to Tax
a. Section 6653(a) and (a)(1) and (a)(2)
Negligence or intentional failure to keep adequate records of tip income which results in the underpayment of tax supports the imposition of the additions to tax under section 6653(a), (a)(1), and (a)(2). . Respondent's determination of these additions to tax for 1980 and 1981 is presumed *492 correct, and petitioner bears the burden of proving otherwise. ; Rule 142(a). Because of the lack of record keeping and the wide discrepancies between the amounts of toke income reported by petitioner and the actual amounts of such income, we sustain respondent's determination regarding the additions to tax for the years 1980 and 1981. See . b. Section 6653(b)(1) and (b)(2)
Section 6653(b)(1) and (2) provide for an addition to tax if any part of a year's underpayment is due to fraud. The addition to tax is an amount equal to 50 percent of the amount of the underpayment and 50 percent of the amount of the interest due thereon. The burden of proving fraud by clear and convincing evidence is upon respondent. Sec. 7454(a); Rule 142(b); . To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. ; *493 . The existence of fraud is a question of fact to be determined from the entire record. . Fraud is not to be imputed or presumed. . However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. . The taxpayer's entire course of conduct may be examined to establish the requisite fraud intent. . The intent to conceal or mislead may be inferred from a pattern of conduct. . A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. . However, the mere failure to report income is not sufficient to establish fraud. , *494 affg. a Memorandum Opinion of this Court. Respondent determined income tax and the addition to tax for fraud in 1982 on February 10, 1989, almost 4 years after his determination of petitioner's liabilities for the 1980-1981 years. Respondent argues that 1982 was the first of four years of a pattern of petitioner's consistent failure to report any toke income she received as a Stardust dealer. Respondent called as a witness the special agent of the Internal Revenue Service, who conducted a criminal fraud investigation of petitioner's 1983-1985 tax liabilities. The special agent testified that petitioner had told her tax preparer, Sharon Berry, that she was a pit clerk in the 1983-1985 tax years. This occupation was disclosed on petitioner's 1983 income tax return. On the basis of petitioner's representations, the tax preparer prepared petitioner's 1984 and 1985 tax returns on Form 1040-EZ. This testimony was confirmed by Ms. Berry, a tax preparer in Las Vegas for 18 years. Ms. Berry testified that had she known that petitioner was a dealer, Form 1040-EZ would not have been used in preparing petitioner's returns for 1984 and 1985. During the course of the criminal investigation, *495 petitioner furnished the special agent three fictitious letters (dated in March and April of 1986) typed on Stardust stationery. These letters were signed by individuals purporting to be "Vice-President, Casino Operations", "Personnel Director", and "Shift Manager", and generally represented that in 1983, petitioner was not a dealer, but a floor person who could not receive tips. Neither Ms. Stover or Mr. Dioguardi had heard of the Stardust employees who purportedly wrote these letters. Respondent issued a notice of deficiency for the years 1983 and 1985 on April 7, 1989, in which he determined deficiencies for those years due to underreported toke income and additions to tax for fraud. Petitioner claims she did not petition this Court for those years because the notice of deficiency was not received by her until September 1989. As stated previously, petitioner was a "21" dealer in 1982. She reported no toke income. She admitted at trial that she had been a dealer the 12 years she worked at Stardust. Based on this and other evidence in this record we find that petitioner engaged in a course of fraudulent conduct in the 1982 year to avoid reporting toke income received by her *496 as a Stardust dealer. See . Accordingly, we hold that respondent has sustained his burden of proving that petitioner is liable for the addition to tax for fraud in 1982 under section 6653(b)(1) and (2). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩